UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND HEALTH AND WELFARE FUND, UTAH-IDAHO TEAMSTERS SECURITY FUND, JACKSONVILLE POLICE OFFICERS AND FIRE FIGHTERS HEALTH INSURANCE TRUST, and NYST COUNCIL HEALTH & HOSPITAL FUND, on behalf of themselves and others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> TEVA PHARMACEUTICAL INDUSTRIES LTD.; TEVA PHARMACEUTICALS USA, INC.; TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.; and NORTON (WATERFORD) LTD., <br><br> *Defendants.* | Civil Action No. 1:23-cv-11131-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Table of Authorities** ..................................................................................................................... ii

**Introduction** ................................................................................................................................. 1

**Background** ................................................................................................................................. 2

**Argument** ..................................................................................................................................... 5

      A.      There Is Good Cause to Stay These Proceedings. ................................................... 6

      B.      A Stay Would Be Reasonable in Duration. ............................................................. 9

      C.      The Balance of Equities Favors Staying These Proceedings. ................................ 10

**Conclusion** ................................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*6100 Pacific, LLC v. CWI, Inc.*, 2018 WL 3127175 (S.D. Ind. Mar. 16, 2018) ....................... 9, 16

*Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50 (1st Cir. 2006) .............................................. 8

*Arnold on behalf of Arnold v. City of Hampton*, 2022 WL 20717564 (N.D. Ga. June 16, 2022) . 9, 15

*Barnes v. Harris*, 2013 WL 1737950 (D. Utah Apr. 18, 2013) ...................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ......................................................................... 14

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1 (D.D.C. 2001) ................... 8

*Dicenzo v. Mass. Dep't of Correction*, 2016 WL 158505 (D. Mass. Jan. 13, 2016) ...... 7, 9, 12, 13

*Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34 (1st Cir. 2000) .................................... 8

*Good v. Altria Grp., Inc.*, 231 F.R.D. 446 (D. Me. 2005) ............................................................ 12

*Hillside Plastics, Inc. v. Dominion & Grimm U.S.A., Inc.*,
  2018 WL 3727365 (D. Mass. Aug. 6, 2018) .............................................................. 7, 9, 12, 13

*Iron Workers District Council of New England Health and Welfare Fund et al. v. Teva Pharma.
  Indus. Ltd. et al.*, No. 1:23-cv-11131-NMG (D. Mass.) ............................................... 2, 4, 5, 10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ............................................................................... 6, 7

*LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51 (D. Mass 1997) ...................................................... 9

*Marquis v. FDIC*, 965 F.2d 1148 (1st Cir. 1992) ...................................................................... 6, 7

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72 (1st Cir. 2004) ......................... 6

*New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35 (D. Mass. 2015) ............ 6, 7

*Perez-Acevedo v. Rivero Cubano*, 520 F.3d 26 (1st Cir. 2008) ................................................... 13

*Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775 (1st Cir. 1988) .................................................... 7

*Rowe v. Citibank N.A.*, 2015 WL 1781559 (S.D.W.Va. Apr. 17, 2015) ................................. 10, 15

*Santiago v. Bloise*, 741 F. Supp. 2d 357 (D. Mass. 2010) ..................................................... 13, 14

*Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998) ........................................... 9

*Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, 2016 WL 11004353 (D. Mass. June 15, 2016) .................................................................................................................... 8

*Teva Branded Pharma. Prods. R&D, Inc. et al. v. Cipla Ltd.*, No. 2:20-cv-10172-JXN-MAH (D.N.J.) ............................................................................................................................... 3

*Teva Branded Pharma. Prods. R&D, Inc. et al. v. Cipla Ltd.*, No. 23-02241 (Fed. Cir.) .............. 4

*Vicchairelli v. New England Linen Supply Co.*, 2020 WL 8335593 (D.N.J. Feb. 26, 2020) ... 9, 15

*Zavatsky v. O'Brien*, 902 F. Supp. 2d 135 (D. Mass. 2012) ........................................................ 12

*Zutz v. Nelson*, 2009 WL 10711548 (D. Minn. Jan. 12, 2009) .............................................. 12, 14

Defendants Teva Pharmaceutical Industries, Ltd., Teva Pharmaceutical USA, Inc., Teva Branded Pharmaceutical Products R&D, Inc., and Norton (Waterford) Ltd. (collectively, "Teva"), by and through their undersigned counsel, respectfully move this Court to enter an order staying proceedings, including all discovery deadlines, pending the resolution of Teva's Rule 12(c) Motion for Judgment on the Pleadings ("Rule 12(c) Motion") filed in the instant action.

## INTRODUCTION

In May 2023, the Iron Workers District Council of New England Health and Welfare Fund, the Utah-Idaho Teamsters Security Fund, the Jacksonville Police Officers and Fire Fighters Health Insurance Trust, and the NYST Council Health and Hospital Fund ("Plaintiffs") filed a putative class action complaint against Teva claiming violations of federal and state antitrust laws, as well as state consumer protection and unjust enrichment laws, related to two of Teva's asthma medication products: QVAR and QVAR Redihaler. Plaintiffs claimed that Teva engaged in various forms of anticompetitive conduct as part of a "monopolistic scheme" to delay competition for these products from generic QVAR. Two months later, in September 2023, after Teva emerged victorious from a patent infringement lawsuit that reaffirmed the validity of certain of its QVAR-related patents, Plaintiffs filed an amended complaint to try pleading around that lawsuit's result.

Teva responded by filing a motion to dismiss in October 2023. In May 2024, this Court issued an order granting the motion in part, and denying it in part. The Court dismissed Plaintiffs' "sham litigation" claims and certain state antitrust and consumer protection claims, but permitted this case to proceed on the remainder of Plaintiffs' allegations. Presently, in conjunction with this motion, Teva is filing its Answer to Plaintiffs' amended complaint and its Rule 12(c) Motion.

As described below, because Teva's Rule 12(c) Motion, if granted, would be case-dispositive and eliminate the need for expensive discovery proceedings that have yet to begin, "good cause" exists for this Court to stay these proceedings, including all upcoming discovery

deadlines, pending its resolution of the Rule 12(c) Motion. Such a stay would be for a reasonable duration—the short period of time the Court takes to fully address the Rule 12(c) Motion. Plaintiffs would not be prejudiced by this brief delay to the start of discovery (if discovery is necessary), because the Rule 12(c) Motion will only require the Court to consider the factual allegations contained in Plaintiffs' amended complaint and Teva's Answer (and not any other evidence that Plaintiffs could potentially obtain through subsequent discovery). And, this brief delay would promote judicial economy and prevent prejudicing Teva with the burden of expensive discovery obligations where such discovery may prove entirely unnecessary.

## BACKGROUND

The instant action relates to two asthma medications that help "prevent life-threatening asthma attacks": QVAR and QVAR Redihaler. *See* ECF No. 31, Am. Class Action Compl. & Demand for Jury Trial, ¶¶ 4, 17 *Iron Workers District Council of New England Health and Welfare Fund et al. v. Teva Pharma. Indus. Ltd. et al.*, No. 1:23-cv-11131-NMG (D. Mass.) ("AC"), ECF No. 31. Teva acquired the rights to QVAR in 2006. *Id.* ¶¶ 217-19. Just over a decade later, Teva received approval to begin marketing its QVAR Redihaler. *Id.* ¶¶ 264-65. Teva subsequently listed the patents it obtained related to these two products in the Food and Drug Administration's Orange Book. *Id.* ¶¶ 244-45, 259, 272.

A year before it received approval for its QVAR Redihaler, Teva also announced it was acquiring Allergan plc's ("Allergan") generic pharmaceutical business. *See* ECF No. 62, Defs.' Verified Answer to Pls.' Am. Class Action Compl. & Demand for Jury Trial, ¶ 13, *Iron Workers*, No. 1:23-cv-11131-NMG ("Ans."). The Federal Trade Commission ("FTC") was concerned that the acquisition could reduce competition in the generic pharmaceutical market. *Id.* Therefore, "to preserve competition," the FTC only agreed to consent to the acquisition if Teva would "divest [its] rights and assets related to 79 pharmaceutical products" in both its own and Allergan's

portfolios. *Id.*; Ex. 1 to Ans. (FTC Consent Announcement). Teva complied and entered a binding Consent Order with the FTC that required it to sell the "rights and assets" to Allergan's generic QVAR product. Ans. ¶ 13. In turn, Teva entered into an Asset Purchase Agreement ("APA") and sold the generic QVAR product to Amneal Pharmaceuticals, Inc. ("Amneal"). *Id.* The Consent Order and APA each also required Teva to agree not to sue Amneal for "patent infringement related to generic QVAR." *Id.*

Amneal became the first generic manufacturer to file an ANDA for generic QVAR. AC ¶¶ 455-56. As required by the Consent Order and APA, Teva did not sue for patent infringement. Ans. ¶¶ 455-58. But when two other generic manufacturers subsequently filed ANDAs for generic QVAR—Cipla Ltd. ("Cipla") and Aurobindo Pharma Ltd. ("Aurobindo")—Teva sought to enforce its valid patent rights and filed infringement lawsuits against both companies. AC ¶¶ 472, 475, 478-81. Teva settled with Aurobindo. *Id.* ¶ 557. It then prevailed in a bench trial over Cipla, where a federal district court determined that Teva's asserted QVAR patents were valid and were infringed by Cipla's product, and therefore ordered Cipla to cease manufacturing, marketing, or selling any product derived from its QVAR ANDA until the expiration of Teva's patents. *See* ECF No. 304, Joint Final J. Order, *Teva Branded Pharma. Prods. R&D, Inc. et al. v. Cipla Ltd.*, No. 2:20-cv-10172-JXN-MAH (D.N.J.) ("Patent Litigation").[1]

Plaintiffs in the instant action filed their initial complaint against Teva two months before Teva's victory in the Patent Litigation. *See* ECF No. 1, Class Action Compl. & Demand for Jury Trial, *Iron Workers*, No. 1:23-cv-11131-NMG, ECF No. 1 (D. Mass.). In September 2023,

---

[1] Cipla has appealed this decision, but that appeal does not challenge the district court's finding of patent infringement, and instead only challenges the court's ruling on validity. *See* ECF No. 18, Brief for Def.-Appellant, *Teva Branded Pharma. Prods. R&D, Inc. et al. v. Cipla Ltd.*, No. 23-02241 (Fed. Cir.). The appeal is currently pending before the Federal Circuit. *Id.*

Plaintiffs filed an amended complaint trying to plead around that decision. *See generally* AC. They allege that Teva violated myriad state antitrust, consumer protection, and unjust enrichment laws by engaging in a multifaceted "monopolistic scheme" to delay generic competition for Teva's QVAR products that included improper Orange Book listings, an unlawful "product hop," "sham litigation," and a "reverse payment" agreement with Amneal. AC ¶¶ 616-696. Teva filed a motion to dismiss the amended complaint in its entirety. *See* ECF No. 39, Defs.' Mot. to Dismiss Pls.' Am. Class Action Compl., *Iron Workers*, No. 1:23-cv-11131-NMG. Primarily, Teva argued that all of Plaintiffs' allegations should be dismissed for a lack of antitrust standing because each of the allegations failed to claim that Teva's conduct had *caused* any anticompetitive harm to consumers. *See id.* at 8-13. Because Teva's patents had been held valid and enforceable by a federal court, Teva contended that it was "impossible, as a matter of law, for Plaintiffs to prove that a but-for world would have resulted in generic competition occurring any earlier." *Id.* at 8-9. Separately, Teva contended Plaintiffs failed to plausibly plead the different parts of their "monopolistic scheme" and that their state law claims should be dismissed on different, independent bases. *Id.* at 13-25.

The Court granted Teva's motion in part and denied it in part. *See* ECF No. 49, Mem. & Order, *Iron Workers*, No. 1:23-cv-11131-NMG ("MTD Decision"). In particular, the Court agreed that "Teva's success in the [Patent] [L]itigation forecloses the claims of sham litigation." *Id.* at 21. It also agreed that Plaintiffs' claims under certain state laws were not viable. *Id.* at 25-27, 28-30. It otherwise rejected Teva's remaining arguments, and determined that Plaintiffs had, *inter alia*, adequately pleaded antitrust standing and the existence of an illegal reverse payment agreement between Teva and Amneal. *Id.* at 11-19. In particular, the Court rejected Teva's causation argument because the result in the Patent Litigation "does not imply that all would-be

4

competitors are necessarily barred from launching a generic competitor to QVAR." *Id.* at 12. In support of that decisive inference, the Court emphasized that Teva's decision not to sue Amneal "adds credence to the plaintiffs' contention that a generic manufacturer could successfully design around Teva's QVAR patents." *Id.* at 13.

In conjunction with this Motion to Stay Proceedings, Teva filed its Answer to Plaintiffs' amended complaint and its Rule 12(c) Motion seeking judgment on the pleadings on June 18, 2024. The Answer provides color where the Court was previously resigned to consider only black and white. Relying on the Answer, Teva's Rule 12(c) Motion explains (1) why Teva did not sue Amneal and (2) that Teva's and Amneal's agreement regarding generic QVAR was in no way an unlawful "reverse payment," but instead a product of an FTC Consent Order intended "to preserve competition." Ans. ¶ 13; Ex. 1 to Ans. (FTC Consent Announcement). It therefore undermines the key inference the Court relied on in rejecting Teva's dispositive antitrust standing argument: that the Patent Litigation did not forestall "all" generic competition in light of Teva's decision not to sue Amneal after the latter filed its ANDA for its generic QVAR product. In turn, it leaves Plaintiffs with only pure conjecture to oppose Teva's antitrust standing argument, and therefore provides "good cause" to stay these proceedings while the Court resolves Teva's Rule 12(c) Motion—and potentially disposes of this case.

## ARGUMENT

"Every court is vested with the power 'to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *New Balance Athletic Shoe, Inc. v. Converse, Inc.*, 86 F. Supp. 3d 35, 36 (D. Mass. 2015) (Gorton, J.) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). This includes "the inherent power to stay proceedings for prudential reasons," *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004), including "when the efficacious management of court dockets reasonably requires such

5

intervention," *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992). However, "stays cannot be cavalierly dispensed: [1] there must be good cause for their issuance; [2] they must be reasonable in duration; and [3] the court must ensure that competing equities are weighed and balanced." *Id.* at 1155 (enumeration added); *see also New Balance*, 86 F. Supp. 3d at 36 (explaining that the court may "stay proceedings in its discretion through 'the exercise of judgement, which must weigh competing interest and maintain an even balance'" (quoting *Landis*, 299 U.S. at 255)). "The moving party bears the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26(c)(1)." *Dicenzo v. Mass. Dep't of Correction*, 2016 WL 158505, at *1 (D. Mass. Jan. 13, 2016) (citing *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988)).

Here, each of these factors weighs in favor of staying these proceedings, including all discovery deadlines, pending the Court's decision on Teva's potentially dispositive Rule 12(c) Motion.

### A. There Is Good Cause to Stay These Proceedings.

Courts within this district have held that "[a] pending dispositive motion constitutes good cause for a stay of discovery." *Hillside Plastics, Inc. v. Dominion & Grimm U.S.A., Inc.*, 2018 WL 3727365, at *2 (D. Mass. Aug. 6, 2018) (granting a motion to stay discovery and case proceedings pending the full resolution of the defendants' Rule 12(c) motion for judgment on the pleadings); *see also Dicenzo*, 2016 WL 158505, at *2 (finding "good cause" to grant a motion to stay pending resolution of the defendants' potentially "dispositive" Rule 12(b) motions to dismiss). This is because "it makes little sense to force either side to go through expensive discovery where all, or part, of the case may be dismissed." *Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, 2016 WL 11004353, at *2 (D. Mass. June 15, 2016) (finding "good cause" to grant a protective order under Rule 26(c) staying discovery pending resolution of the defendant's

potentially dispositive motion to dismiss); *see also Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 5 (D.D.C. 2001) (holding that a stay of discovery pending decision on a dispositive motion that would fully resolve the case constitutes "good cause" because it "furthers the ends of economy and efficiency, since if [the motion] is granted, there will be no need for discovery").

The First Circuit has, in turn, affirmed decisions to stay discovery pending the resolution of a potentially dispositive motion. *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54, 58-59 (1st Cir. 2006) (affirming decision of district court to stay discovery proceedings pending resolution of defendant's Rule 12(c) motion and rejecting plaintiff's argument attacking this exercise of discretion as "impuissant"); *Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34, 38 (1st Cir. 2000) (affirming district court's use of its "broad discretion" to stay discovery pending resolution of a potentially dispositive motion where "discovery is unnecessary" to adjudicate the motion). Courts within this district have also regularly exercised their discretion to stay proceedings in these circumstances. *See, e.g.*, *Hillside*, 2018 WL 3727365, at *2-3; *Dicenzo*, 2016 WL 158505, at *2; *LTX Corp. v. Daewoo Corp.*, 979 F. Supp. 51, 54 (D. Mass 1997) (recognizing that the court had previously granted motion to stay discovery while potentially dispositive motion to dismiss for lack of personal jurisdiction was pending); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 78 (D. Mass. 1998) (similar). So have myriad other district courts throughout the country, particularly when Rule 12(c) motions were pending. *See, e.g.*, *Arnold on behalf of Arnold v. City of Hampton*, 2022 WL 20717564, at *1 (N.D. Ga. June 16, 2022); *Vicchairelli v. New England Linen Supply Co.*, 2020 WL 8335593, at *2 (D.N.J. Feb. 26, 2020); *6100 Pacific, LLC v. CWI, Inc.*, 2018 WL 3127175, at *2 (S.D. Ind. Mar. 16, 2018); *Rowe v. Citibank N.A.*, 2015 WL 1781559, at *2 (S.D.W. Va. Apr. 17, 2015).

The Court previously rejected Teva's antitrust standing argument—which would be dispositive of Plaintiffs' amended complaint because it highlights why Plaintiffs have failed to plead that Teva's alleged actions actually *caused* a delay in the market entry of generic QVAR— because Teva's victory in the Patent Litigation upholding its QVAR patents as valid and infringed "does not imply that all would-be competitors are necessarily barred from launching a generic competitor to QVAR." MTD Decision at 12. Crucially, however, the Court only accepted this hypothetical world of "would-be competitors" who could potentially design around Teva's patents because, as it emphasized, one competitor may already exist (and filed an ANDA): Amneal. *Id.* at 12-13.

As Teva's Rule 12(c) Motion (relying on its Answer) elucidates, however, Teva and Amneal did not strike some secret backroom deal to prevent Amneal's hypothetically elusive generic QVAR product from coming to market. *See* ECF No. 64, Memo. in Support of Defs.' 12(c) Motion for a Judgement on the Pleadings, *Iron Workers*, No. 1:23-cv-11131-NMG ("12(c) Mot. Br."). Instead, Teva and Amneal entered into an Asset Purchase Agreement, as required by an FTC Consent Order intended "to preserve competition," by which Teva agreed to divest its newly acquired Allergan generic QVAR product to Amneal, and by which Teva could not sue Amneal for patent infringement. *Id.* at 11-12; Ex. 1 to Ans. (FTC Consent Announcement). And as the Rule 12(c) Motion further explains, Plaintiffs insist that Amneal publicly announced a 2021 launch date for QVAR, but a review of Amneal's statements reveals that it never made such an announcement and was likely talking about a *different* respiratory product. *See* 12(c) Mot. Br. at 13-14; *see also* Ans. ¶¶ 459-61. In this light, Plaintiffs' claim of a "reverse payment" between Teva and Amneal is entirely undone. *See* 12(c) Mot. Br. at 11-15. And, when understood in context, Amneal's decision not to launch until 2025 was not based on some conspiratorial

8

agreement with Teva to delay launching a generic QVAR product that would elide Teva's patents, but instead based on its own launch plans and efforts to obtain regulatory approval. *Id.* at 14. Without actual evidence of any potential "would-be competitors" to design around Teva's patents, Plaintiffs' efforts to argue around their inability to plead causation represent pure speculation. They therefore fail to state a claim for relief, and dismissal of their amended complaint is warranted.

Discovery proceedings have not yet begun in this case. The Rule 16 Scheduling Conference with the Court has not yet occurred, and therefore, no scheduling order establishing relevant discovery pre-trial deadlines has even been filed with or entered by the Court. Staying these proceedings to consider Teva's potentially case-dispositive Rule 12(c) Motion could "further[] the ends of economy and efficiency, since if [the motion] is granted, there will be no need for discovery." *Chavous*, 201 F.R.D. at 5. It makes "little sense to force either side to go through expensive discovery where" this entire case may ultimately be dismissed. *Steward*, 2016 WL 11004353, at *2.

Given the potentially dispositive nature of Teva's Rule 12(c) Motion and the current procedural posture of this case, this Court should have no trouble finding that "good cause" exists to stay these proceedings pending its consideration of that motion.

B. **A Stay Would Be Reasonable in Duration.**

Courts within this district have also found that staying proceedings to consider a potentially case-dispositive motion inherently will only create a "relatively brief delay in Plaintiff's receipt of discovery if Defendants' dispositive motions are denied" because the delay only lasts until the motion is briefed and decided by the court, and therefore constitutes a reasonable duration of time. *Dicenzo*, 2016 WL 158505, at *2; *see also Hillside*, 2018 WL 3727365, at *2 (explaining that "holding discovery in abeyance until such time as a ruling on the dispositive motion becomes final

9

will not unreasonably delay the litigation"). This Court has agreed that, like here, where "discovery has not yet begun," any short delay caused by a stay "is not likely to inconvenience this court." *Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 148-49 (D. Mass. 2012) (Gorton, J.). Other district courts within this Circuit have agreed as well. *See Good v. Altria Grp., Inc.*, 231 F.R.D. 446, 447 (D. Me. 2005) (granting motion to stay pending resolution of a potentially dispositive motion because "[i]f the motion is granted, the stay will have saved time and expense" and "[i]f not, the stay will have been only for the time necessary to rule on the motion").

Teva is only moving for a stay of the current proceedings and upcoming discovery deadlines pending the Court's resolution of its 12(c) Motion. If the Court grants this stay, there will only be a "relatively brief delay in Plaintiff[s'] receipt of discovery if Defendants' motions are denied." *Dicenzo*, 2016 WL 158505, at *2. And if the Court grants this motion and disposes of this case, "obviat[ing] the need for further discovery," that "delay" will be fully justified. *Zutz v. Nelson*, 2009 WL 10711548, at *4 (D. Minn. Jan. 12, 2009) (granting motion to stay where defendants had filed a Rule 12(c) motion for judgment on the pleadings).

### C. The Balance of Equities Favors Staying These Proceedings.

Finally, courts within this district have found that the balance of equities favors granting a stay where a dispositive motion is pending before the court. *See Hillside*, 2018 WL 3727365, at *2 (holding that "[o]n balance, avoiding potentially unnecessary discovery costs—and if the motion to dismiss succeeds, then all discovery costs would have been unnecessary—will not significantly prejudice [Plaintiff], and may even operate to its benefit" (internal quotations omitted)); *Dicenzo*, 2016 WL 158505, at *2.

The Court should find the same here. Plaintiffs will not be prejudiced by a short delay in proceedings to consider Teva's Rule 12(c) Motion. A Rule 12(c) motion "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero Cubano*, 520 F.3d 26, 29 (1st Cir.

2008). It therefore requires a court to determine whether a plaintiff's complaint contains factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Santiago v. Bloise*, 741 F. Supp. 2d 357, 360 (D. Mass. 2010) (internal quotations omitted). However, a "Rule 12(c) motion nonetheless differs from a Rule 12(b)(6) motion because it implicates the pleadings as a whole." *Id.* (internal quotations omitted). "Filed after the close of the pleadings, a Rule 12(c) motion is based solely on the factual allegations in the complaint and answer." *Id.* (internal quotations omitted). In turn, because the Court can only decide the viability of Plaintiffs' amended complaint based on the "factual allegations" in these two pleadings, Plaintiffs are not prejudiced by shortly delaying the beginning of discovery (should it prove necessary), as documents that might be obtained through those processes are irrelevant to the court's consideration of the Rule 12(c) Motion. *See*, *Zutz*, 2009 WL 10711548, at *4 (finding plaintiffs would not be prejudiced by staying discovery while the Court considered Defendants' 12(c) motion because such motion "only challenge[s] the sufficiency of the pleadings"). And, because no scheduling order has yet been proposed or entered by the Court, a stay is not interrupting the orderly proceeding of an already established pre-trial discovery schedule and any of Plaintiffs' efforts related to those proceedings.

On the flip side of the coin, Teva is likely to be prejudiced if proceedings are not stayed. As the Supreme Court has recognized, "antitrust discovery can be expensive." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The Court also noted that this expense is so significant that it will likely "push cost-conscious defendants to settle even anemic cases before reaching [later trial] proceedings." *Id.* at 559. Therefore, courts demand that plaintiffs assert "plausible" allegations at the pleading stage to ensure frivolous claims are weeded out before permitting expensive discovery to proceed. *Id.* at 556-57.

Teva's Rule 12(c) Motion seeks to potentially prevent the burden of expensive discovery by testing the sufficiency of the amended complaint's allegations in light of Teva's Answer. Based on Plaintiffs' allegations, the discovery burden is likely to be significant: they have nine separate claims for relief under federal and various state antitrust laws, as well as countless consumer protection and unjust enrichment laws. AC ¶¶ 616-701. Based on Plaintiffs' different allegations, it is likely that Plaintiffs will seek discovery from up to, and potentially more than, ten years ago. *See, e.g.*, AC ¶¶ 234-243 (claiming, as part of their "product hop" allegations, that Teva "added an unnecessary dose counter" to its QVAR product in early 2014). Courts have granted motions to stay pending resolution of a 12(c) motion in circumstances similar in scope. *See, e.g.*, *Arnold*, 2022 WL 20717564, at *1 (granting motion to stay where defendants had filed a Rule 12(c) motion where complaint "name[d] numerous defendants, alleges facts arising out of several events over the course of a year, and pleads at least eleven causes of action," making the "scope of potential discovery . . . large"); *Rowe*, 2015 WL 1781559, at *2 (granting motion to stay where defendants had filed a Rule 12(c) motion because it was "still fairly early" in the litigation and plaintiffs sought discovery from the prior ten years).

More importantly, Teva's 12(c) Motion could obviate the need for discovery entirely, or at a minimum excise entire areas of inquiry from the case. Requiring Teva to begin engaging in a burdensome and expensive process that could prove unnecessary would unduly prejudice Teva. It would also undermine judicial economy. Countless courts agree. *See, e.g.*, *Arnold*, 2022 WL 20717564, at *1 (granting motion to stay where defendant had filed a Rule 12(c) motion because it "would serve the interests of judicial economy and might help to avoid unnecessary expense"); *Vicchairelli*, 2020 WL 8335593, at *2 (granting motion to stay where defendant had filed a Rule 12(c) motion because proceeding with discovery "would create unnecessary burdens and

12

inefficiencies, especially if Defendant's Motion were to be granted, thus terminating this case and eliminating the need for costly discovery"); *6100 Pacific*, 2018 WL 3127175, at *2 (granting motion to stay where defendants had filed a Rule 12(c) motion because first ruling on the motion could "simplify the issues in question" and "simplify the necessary issues for later discovery, if any claims survive the motion," relaxing the burden on the court and the parties); *Barnes v. Harris*, 2013 WL 1737950, at *2 (D. Utah Apr. 18, 2013) (granting motion to stay where defendant had filed a Rule 12(c) motion because "discovery in the case could prove time consuming and expensive").

Overall, the balance of equities further weighs in favor of this Court staying proceedings pending its disposition of Teva's Rule 12(c) Motion.

## **CONCLUSION**

For the foregoing reasons, Teva respectfully requests that this Court stay proceedings pending disposition of its Rule 12(c) Motion for Judgment on the Pleadings.

Dated: June 18, 2024                    Respectfully submitted,

                                        */s/ Devora W. Allon*

                                        Devora W. Allon (*pro hac vice*)
                                        Gilad Bendheim (*pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, NY 10012
                                        Telephone: 212-446-5967
                                        Facsimile: (212) 446-4900
                                        devora.allon@kirkland.com
                                        gilad.bendheim@kirkland.com

                                        Tasha Francis Gerasimow (*pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        333 West Wolf Point Plaza
                                        Chicago, Illinois 60654
                                        Telephone: (312) 862-2384
                                        Facsimile: (312) 599-2213
                                        tasha.gerasimow@kirkland.com

                                        Tiffany Knapp
                                        KIRKLAND & ELLIS LLP
                                        200 Clarendon St 47th Floor
                                        Boston, MA 02116
                                        Telephone: 617-385-7405
                                        Facsimile: (617) 385-7501
                                        tiffany.knapp@kirkland.com

                                        *Counsel for Defendants*

CERTIFICATE OF SERVICE

I, Devora W. Allon, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 18, 2024.


DATED:  June 18, 2024                    */s/ Devora Allon*
                                                                   Devora W. Allon (*pro hac vice*)