**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IRON WORKERS DISTRICT COUNCIL OF NEW ENGLAND HEALTH AND WELFARE FUND, UTAH-IDAHO TEAMSTERS SECURITY FUND, JACKSONVILLE POLICE OFFICERS AND FIRE FIGHTERS HEALTH INSURANCE TRUST, and NYST COUNCIL HEALTH & HOSPITAL FUND, on behalf of themselves and others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> TEVA PHARMACEUTICAL INDUSTRIES LTD.; TEVA PHARMACEUTICALS USA, INC.; TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC.; and NORTON (WATERFORD) LTD., <br><br> *Defendants.* | Civ. No. 23-cv-11131-NMG |

**DECLARATION OF TODD A. SEAVER ON BEHALF OF BERMAN TABACCO IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL AND FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

I, Todd A. Seaver, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am a partner in the law firm of Berman Tabacco. I am admitted to practice in the Commonwealth of Massachusetts and before this Court. Except as otherwise noted, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify competently to the facts contained herein.

2.     I respectfully submit this Declaration in support of Class Counsel's Motions for Final Approval of Proposed Settlement and Distribution Plan and for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards in connection with the services rendered in this action (the "Action") and the proposed class action settlement with Defendants.[1]

3.     Berman Tabacco is counsel of record for the named plaintiffs Iron Workers District Council of New England Health & Welfare Fund ("Iron Workers") and Utah-Idaho Teamsters Security Fund ("Utah-IdahoTeamsters"). I, or members of my firm, have been involved in almost every aspect of this case since its inception.

4.     On April 2, 2026, the Court preliminarily approved the Settlement and appointed Berman Tabacco, Sperling Kenny Nachwalter, LLC (F/K/A Sperling & Slater, LLC), and Hilliard Shadowen LLP as class counsel on behalf of the Settlement Class. *See* Order Granting Preliminary Approval of Class Action Settlement ¶ 12, ECF No. 204. These firms are referred to herein as "Class Counsel." The eight firms representing the plaintiffs, which include Class Counsel, are referred to herein as "Plaintiffs' Counsel."

## HISTORY OF THE LITIGATION

5.     This Action arose out of the investigation and research of attorneys at Berman Tabacco. In 2022, Berman Tabacco attorneys began looking into attempts by various pharmaceutical companies to delay generic competition in segment of inhalers, drug-device combinations prescribed to treat common respiratory conditions like asthma. The attorneys

---

[1] "Defendants" or "Teva" means, collectively, Teva Pharmaceuticals Industries LTD., Teva Pharmaceuticals USA, Inc., Teva Branded Products R&D, Inc., and Norton (Waterford) Ltd.

identified numerous brand name inhalers which had been on the market for at least twenty years, but lacked a generic alternative. Among those inhalers was QVAR.

6.     Berman Tabacco attorneys researched two patent litigations involving QVAR: *Teva Branded Pharmaceutical Products R&D, Inc. v. Cipla Ltd.*, No. 2:20-cv-10172-JXN-MAH (D.N.J.) and *Teva Branded Pharmaceutical Products R&D, Inc. v. Aurobindo Pharma Ltd.*, No. 2:20-cv-14833-JXN-MAH (D.N.J.). While reviewing the patents at issue, Berman Tabacco attorneys understood that at least some of the patents claimed only mechanical functions within the inhaler device and did not claim the active drug ingredient beclomethasone dipropionate. The attorneys, relying on their review of academic literature, and research into the Orange Book Transparency Act and U.S. Food and Drug Administration ("FDA") regulations, recognized that the patents were potentially unlawfully listed.

7.     Based on this investigation, Berman Tabacco's attorneys suspected that Defendants may have listed the patents in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") with the intention of causing delay in the onset and depth of generic competition. Berman Tabacco then drafted an initial complaint, discussed retention with existing clients, and engaged with attorneys at the law firms Sperling Kenny Nachwalter, LLC and Hilliard Shadowen LLP to organize a litigation effort on behalf of end-payors for QVAR and QVAR Redihaler.

8.     **Original complaint, amended complaint, and Rule 12(b)(6) motion.** Berman Tabacco took the lead in drafting an original class action complaint on behalf of Iron Workers and a putative class of end-payors, filed on May 19, 2023. Complaint, ECF No. 1. The representation was undertaken on a fully contingent-fee basis, and with Class Counsel and Plaintiffs' Counsel advancing all litigation expenses.

9.     The complaint alleged, on behalf of end-payors, that Defendants had engaged in an anticompetitive scheme to monopolize the market for beclomethasone dipropionate by: (i) conspiring with the first generic manufacturer to file an abbreviated new drug application ("ANDA"), Amneal Pharmaceuticals, Inc. ("Amneal"), to delay generic entry through a

"reverse-payment;" (ii) wrongfully listing device-only patents, which did not claim the drug substance beclomethasone dipropionate, in the Orange Book; (iii) engaging in "hard-switch" product hop from QVAR HFA to the QVAR Redihaler; and (iv) engaging in sham litigation against Cipla Ltd. and Aurobindo Pharma Ltd. The plaintiffs sought an injunction under federal antitrust law and enhanced damages under state antitrust and consumer protection laws.

10.     On September 1, 2023, Berman Tabacco filed a substantively identical amended complaint which added three named plaintiffs (Utah-Idaho Teamsters, Jacksonville Police Officers and Fire Fighters Health Insurance Trust, and New York State Teamsters Council Health & Hospital Fund) and confirmed that Class Counsel had sent letters to the state attorney generals of Arizona, Hawai'i, Illinois, Massachusetts, Minnesota, Montana, Nevada, New Hampshire, New York, Oregon, Rhode Island, and Utah. Am. Compl., ECF No. 31.

11.     On October 18, 2023, Defendants filed their Motion to Dismiss Plaintiffs' Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss Pls.' Am. Class Action Compl., ECF Nos. 38, 39.

12.     The briefing on Defendant's Rule 12(b) motion was comprehensive. Berman Tabacco took the lead role in drafting the initial opposition brief while also directing substantial tasks among Class Counsel. Berman Tabacco spent substantial time editing and incorporating Class Counsel's assigned portions and revisions into the final briefing.

13.     While Class Counsel was drafting the opposition brief, the Federal Trade Commission (FTC) issued two letters to defendant Norton (Waterford) Ltd. challenging the lawfulness of the Orange Book patent listings at issue in this case. Pls. Opp. to Mot. To Dismiss 5 & n.34, ECF No. 40 (Nov. 17, 2023); *see also*, Pls. Letter Requesting Judicial Notice, ECF No. 44 (Jan. 16, 2024).  Beforehand, in September 2023, the FTC had issued a policy statement announcing, for the first time, that the FTC had competition concerns regarding device patents listed in the FDA Orange Book.  *See* Sep. 2023 FTC Policy Statement, filed herewith as **Exhibit H**.

14.     The Court's ruling on Defendant's Rule 12(b) motion in May 2024 granted Defendants' motions in part and denied them in part. *See* Mem. & Order, ECF No. 49  (May 7, 2024) (deciding 12(b)(6) motions). The Court dismissed Plaintiffs' sham litigation claims, and dismissed certain claims brought under the state laws of Arkansas, California, Mississippi, New York, Tennessee, and Utah, but upheld all other claims.

15.     **<u>Teva's Answer and Rule 12(c) motion for Judgment on the Pleadings</u>.** On June 18, 2024, Defendants simultaneously filed their Answer and a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), as well as a Motion to Stay Discovery pending the 12(c) motion. ECF Nos. 61 (Defs.' Mot. to Seal), 62 (Defs.' Answer to Am. Compl.), 63–65 (Defs.' 12(c) Mot. for J.), & 66–67 (Defs.' Mot. to Stay).

16.     Berman Tabacco and co-Class Counsel led the effort in drafting the opposition, resulting in a comprehensive set of final briefing.

17.     The Court issued its decision on Defendants' Motion for Judgment on the Pleadings on November 6, 2024. The Court granted Defendant's motion in part and denied it in part. The Court dismissed the claims premised on a reverse-payment to Amneal, but upheld all remaining claims. Mem & Order on Mot. for Judg. on Pleadings, ECF No. 133 (Nov. 06, 2024).

18.     **<u>Direct purchaser plaintiff class action and subsequent voluntary dismissal</u>.** On May 17, 2024, over a year after Plaintiffs filed their Action, and shortly after the Court denied in large part Teva's motion to dismiss the Action, a direct purchaser plaintiff brought a class action on behalf of a putative class of direct purchasers of QVAR from Teva, captioned *RDC Liquidating Trust v. Teva Pharmaceutical Industries, Ltd.*, No. 1:24-cv-11320-NMG (D.Mass.). The direct purchaser action was substantially identical to Plaintiffs' Action.

19.     Teva answered the direct purchaser complaint on June 18, 2024 and filed a companion motion for judgment on the pleadings pursuant to Rule 12(c). *See RDC Liquidating Trust v. Teva Pharmaceutical Industries, Ltd.*, No. 1:24-cv-11320-NMG at ECF Nos. 17 (Answer) & 18–19 (Mot. for J. on the Pleadings). Teva's Rule 12(c) motion sought judgment on

substantially identical grounds as Teva had moved against the Plaintiffs pursuant to Rule 12(c) in this Action.

20.    The direct purchaser plaintiff did not oppose Teva's Rule 12(c) motion, but instead stipulated to a voluntary dismissal of its action on June 28, 2024. *See id* at ECF No. 22 (voluntary dismissal).

21.    **Discovery.** Discovery in this Action was extensive and hard-fought. Ultimately, Plaintiffs obtained millions of pages of documents from Defendants through multiple sets of document requests. Third party discovery of documents, data and testimony was also extensive, as Plaintiffs subpoenaed twelve third parties.

22.    In total, Plaintiffs collected over 650 gigabytes of documents and 685 gigabytes of transaction-level data, and were anticipating more productions from both Defendants and the third parties at the time of settlement.

23.    ***Defendants' Productions and Motion for Protective Order.*** Defendants' productions alone accounted for over 460,000 documents totaling approximately 4.6 million pages.

24.    On February 28, 2025, Defendants filed a motion for a protective order in an attempt to limit Defendants' waiver of attorney-client privilege to a scope that, Class Counsel argued, did not temporally or substantively cover all of Plaintiffs' allegations. Defs.' Mot. for Protective Order, ECF Nos. 141–143.

25.    In the limited litigation precedents involving improper patent listings in the Orange Book, defendants plead a regulatory mandate defense. This defense requires a subjective belief, based largely on the advice of counsel, that the defendant complied with the federal regulations.

26.    Accordingly, Plaintiffs vigorously contested Defendants' proposed scope of the privilege waiver as underinclusive. Plaintiffs lodged a thorough opposition and rebuttal to Defendants' motion for a protective order. *See* Pls. Mem. in Opp. to Mot. for Prot. Order, ECF No. 145 (March 13, 2025).

27.     After briefing, the parties presented oral argument before Magistrate Judge Levenson in two separate hearings on March 26, 2025 (ECF No. 152), and April 10, 2025 (ECF 157). Magistrate Judge Levenson directed the parties to meet and confer regarding the scope of the waiver. Electronic Clerks Notes for 3/26/2025 Proceedings, ECF No. 152. Plaintiffs never agreed to Teva's asserted formulation of the scope of its privilege waiver.

28.     On May 9, 2025, Defendants notified Plaintiffs that they would not waive attorney-client privilege or assert an "advice of counsel" defense.

29.     Documents related to the defense had been set to be produced no later than September 30, 2025. Revised Scheduling Order, ECF No. 185 (May 29, 2025).

30.     ***Third Party Discovery.*** Plaintiffs subpoenaed three pharmaceutical companies, six pharmacy benefits managers, and three pharmaceutical wholesalers. Class Counsel spent significant time drafting discovery requests, extensively meeting and conferring with counsel for the third parties to secure compliance with the subpoenas, and engaging in letter correspondence regarding any disputes. Through these efforts, Plaintiffs collected more than 825,000 pages of previously non-public information including ANDA filings, market analysis and forecasts, correspondence with federal regulators, and transaction level purchase data relevant to proof of Plaintiffs' claims.

31.     ***Discovery From Named Plaintiffs.*** The named plaintiffs devoted substantial time and effort representing the interests of the end-payor class. In addition to reviewing court filings and keeping abreast of the events in the action, each of the four named plaintiffs responded to substantial discovery demands from Defendants.

32.     Plaintiffs made initial disclosures, responded to 65 requests for production of documents, identified custodians, negotiated and ran search terms, collected documents, and responded to interrogatories. Plaintiffs took the necessary steps to collect transaction level data from the pharmacy benefit managers. At the time the Settlement was reached, Plaintiffs were working with Class Counsel to prepare for 30(b)(6) deposition testimony concerning Teva's 68 topics of examination served on Plaintiffs.

33. ***Document Review.*** For document review of the over 2.5 million pages of documents produced, Class Counsel formed teams of reviewing attorneys from each firm to focus on specific issues, and batched documents out accordingly based on the time-frame of the document and the producing custodian's role at the producing party. To maximize the value of the review, Class Counsel created thousands of pages of work product, including memoranda, summaries, and spreadsheets organizing the evidence by elements of the claims, by issue, and by witnesses. Witness binders and issue binders were later created based on this work product. Utilizing the document review platform from third-party vendor Everlaw retained for the litigation, Class Counsel conducted a linear review of the documents produced through July 17, 2025. At the time, nearly 75% of all the documents had been produced, and Plaintiffs' consultants had conducted extensive analysis of the transaction level data.

34. ***Expert Consultants.*** Plaintiffs hired four experts to consult and to provide expert opinions within their varied fields of expertise: health care economics and estimated damages, FDA regulation and the ANDA approval process, patent issues (the ability to design around the patents, and the enforceability of the patents), and the manufacturing and design of inhalers. At the direction of Class Counsel, each expert was provided with access to the discovery from Defendants and third parties, and subsets of already-reviewed documents and data relevant to their respective expertise. Each expert had devoted significant time to reviewing documents and data collected from the Defendants and third parties in preparation for writing their expert reports.

35. **Settlement negotiations.** Plaintiffs initiated settlement negotiations with Defendants' counsel in mid-March 2025. At that juncture of the case, there had been substantial document discovery between the parties and from third parties. Preparations for depositions of fact witnesses were well underway and subpoenas for testimony from third parties were noticed and served. Class Counsel had by this time retained several expert witnesses on patent issues, regulatory issues, and economics, and the various experts' work was underway. In short, at the

time negotiations commenced, Class Counsel had a substantial understanding of the factual record and the strengths and weaknesses of Plaintiffs' claims.

36.    An important development had also occurred outside of the litigation, namely the U.S. Court of Appeals for the Federal Circuit affirmance of the District Court of New Jersey's order requiring Teva to delist certain patents listed in the Orange Book for a different inhaler that did not claim the drug substance. *Teva Branded Pharmaceutical Prods. R&D, Inc. v. Amneal Pharmaceuticals of N.Y., LLC*, 124 F.4th 898, 922 (Fed. Cir. 2024) ("[T]o qualify for listing, a patent must claim at least the active ingredient in the application and approved drug product."). While that litigation affected a small number of patents relevant to the instant QVAR litigation, Class Counsel appreciated the significance that ruling could have with regard to a principal aim of the instant litigation, *i.e.*, the request for injunctive relief requiring Defendants to request the delisting of QVAR patents from the FDA Orange Book alleged to be improperly listed.

37.    Along with other Class Counsel, I engaged Defendants' counsel to understand if there was a mutual recognition of the opportunity to resolve this case via settlement. Class Counsel emphasized that Plaintiffs sought an agreement to resolve the case that would include a cash payment for the benefit of settlement class members as well as an agreement by Defendants to request the delisting of the several remaining QVAR patents from FDA Orange Book that did not claim the drug.

38.    Direct discussions between Class Counsel and Defendants' counsel unfolded over March, April, May, and June 2025, while fact discovery continued. On August 1, 2025, the parties signed a binding term sheet and notified the Court, which ordered suspension of various litigation deadlines while the parties worked together on a formal settlement agreement. The formal Settlement Agreement, which took nearly two months of further negotiations, was executed on September 25, 2025. In Class Counsel's view, the Settlement reached is an excellent result for the Settlement Class of end-payors and a fair and reasonable compromise of the claims at issue.

39.     As part of the Settlement Agreement, Defendants agreed to take active steps to remove the patent listings from the Orange Book. No later than 10 days after the effective date of the Settlement Agreement, Teva promises to request that the FDA remove U.S. patent numbers 10022509; 10022510; 10695512; 10086156; 11896759; and 11865247 from the Orange Book listings for QVAR 40 (NDA No. 20911), QVAR 80 (NDA No. 20911), QVAR Redihaler (0.04mg) (NDA No. 207921), and QVAR Redihaler (0.08mg) (NDA No. 207921). Settlement Agreement ¶ 7(c).

40.     On or about December 10, 2025, Teva substantially complied with this requirement. Additionally, Teva requested the delisting of nearly two hundred other patents that it deemed were improperly listed but not at issue in this litigation. *See Teva Removes Over 200 Improper Patent Listings Under Pressure from FTC*, United States Federal Trade Commission, Press Release (Dec. 10, 2025), http://ftc.gov/news-events/news/press-releases/2025/12/teva-removes-over-200-improper-patent-listings-under-pressure-ftc.

41.     At the time of this writing, the above patents have been marked as "Delist Requested" on the official online Orange Book database.[2]

42.     Defendants' commitment to withdraw the patents identified in the Settlement Agreement means that QVAR 40 (NDA No. 20911) and QVAR 80 (NDA No. 20911) will have no remaining patents listed in the Orange Book upon final approval of the Settlement. With respect to QVAR Redihaler (0.04mg) (NDA No. 207921), and QVAR Redihaler (0.08mg) (NDA No. 207921), the only remaining patent listings will be those that claim either beclomethasone dipropionate or beclomethasone. In fact, on October 28, 2025, the FDA granted tentative approval of Amneal's generic beclomethasone dipropionate inhaler product, and granted final approval on December 16, 2025.  Amneal launched its generic beclomethasone dipropionate inhaler product in April 2026.

---

[2] Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations, United States Food and Drug Administration (accessed June 1, 2026), https://www.accessdata.fda.gov/scripts/cder/ob/index.cfm.

## OVERALL TIME AND EXPENSES OF CLASS COUNSEL

43.    The table set forth below summarizes the total hours, lodestar and expenses of all Plaintiffs' Counsel that participated in the prosecution of the Action. The total number of hours spent by all Class Counsel from inception of this Action through the date of the Settlement Agreement (September 25, 2025) is 13,230.20, with a corresponding lodestar of $9,763,905.50.

| Firm | Hours to 9/25/2025 | Lodestar to 9/25/2025 | Expenses |
|---|---|---|---|
| Berman Tabacco | 7,851.00 | $5,172,730.50 | $358,905.52 |
| Burke LLP | 149.10 | $186,500.00 | $9,716.06 |
| Glancy Prongay Wolke & Rotter LLP | 261.40 | $317,080.00 | $8,012.39 |
| Hagens Berman Sobol Shapiro LLP | 479.90 | $400,935.00 | $57,757.60 |
| Hilliard Shadowen LLP | 2,453.30 | $1,980,793.50 | $68,761.15 |
| Korein Tillery LLC | 110.60 | $112,860.00 | $1,387.61 |
| Rupp Pfalzgraf LLC | 424.10 | $164,770.50 | $144.10 |
| Sperling Kenny Nachwalter, LLC | 1,500.80 | $1,428,236.00 | $161,019.27 |
| Litigation Fund Interest Expended ($1,179.79 (interest earned) minus $471.23 (interest remaining in account as of 6/2/26)) | | | $708.56 |
| **Totals:** | **13,230.20** | **$9,763,905.50** | **$666,412.26** |

44.    The declarations of all the Class Counsel firms seeking reimbursement are filed herewith as **Exhibits A–G**. The declaration of each Class Counsel firm provides a summary of time records and expenses spent by each firm in the case and a description of each firm's efforts to advance the litigation.

45.    At my direction, staff at Berman Tabacco carried out an analysis of the hours and lodestar. The results show the following breakdown of hours and lodestar by the principal litigation tasks:

10

| Totals By Category | Hours | Hours % | Lodestar | Lodestar % |
|---|---|---|---|---|
| (1) Legal Research | 178.40 | 1.35% | $150,879.50 | 1.55% |
| (2) Pleadings and Motions | 2,359.60 | 17.83% | $1,845,886.50 | 18.91% |
| (3) Factual Investigation and Analysis | 1,289.50 | 9.75% | $851,578.50 | 8.72% |
| (4) Case Planning, Organization and Strategy | 2,065.00 | 15.61% | $1,774,287.00 | 18.17% |
| (5) Merits Discovery | 6,594.30 | 49.84% | $4,416,350.00 | 45.23% |
| (6) Deposition and Prep | 31.80 | 0.24% | $29,046.00 | 0.30% |
| (7) Class Certification | 0.60 | 0.00% | $726.00 | 0.01% |
| (8) Court Appearance and Preparation | 106.20 | 0.80% | $89,800.50 | 0.92% |
| (9) Work with Experts / Consultants | 335.30 | 2.53% | $337,974.00 | 3.46% |
| (10) Settlement Negotiations | 191.80 | 1.45% | $210,414.00 | 2.16% |
| (11) Settlement Procedures & Admin (Post-Settlement Agreement) | 77.70 | 0.59% | $56,963.50 | 0.58% |
| **Totals:** | **13,230.20** | **100%** | **$9,763,905.50** | **100%** |

46.  The largest percentages of hours were dedicated to merits discovery (49.84%), and pleadings and motions (17.83%). Combined with case planning and strategy (15.61%) and pre-complaint fact investigation and analysis (9.75%), these four areas are where 93.03% of total hours were focused.

47.  Class Counsel's lodestar reports do not include substantial time spent by Class Counsel relating to Plaintiffs' motions for preliminary approval of the Settlement or approval of the Plan of Distribution, nor this application for an award of attorneys' fees and expenses and the concurrently filed motion for final approval of the settlement. Nor does the lodestar include the hours that will be spent supervising the distribution of the net settlement fund to authorized claims by members of the class, replying to any objections, and litigating any appeals that may arise from the settlement approvals.

48.  Class Counsel request an award of 33% of the Settlement Fund net of any reimbursed expenses, which amounts to $11,550,000 in attorneys' fees, before interest. (The "Settlement Fund" means the settlement amount of $35 million together with all interest and income earned thereon after being transferred to the escrow account. *See* Settlement Agreement ¶ 7(a), (b)). The requested award therefore represents a **lodestar multiplier of 1.18**. Class Counsel believes that the requested fee award is reasonable, considering the time and effort invested in the case, the work performed on behalf of the class, and the risks faced by Class Counsel.

49.    **<u>Class Counsel's unreimbursed litigation costs and expenses</u>.** Class Counsel's unreimbursed litigation costs and expenses total $666,412.26. These costs and expenses were advanced by Plaintiffs' Counsel at risk of total loss. The $666,412.26 total includes the amounts paid from the Plaintiffs' Counsel Litigation Expense Fund in the amount of $310,208.56 (*see* paragraph 51 below). They are supported by each Class Counsel firm's separate declaration submitted in support of the application for attorneys' fees and expenses, Exs. A–G, and by Berman Tabacco's expenses, reported *infra*. The separate categories and totals are as follows:

| Category | Total |
|---|---|
| Court Costs (e.g., filing fees) | $2,304.50 |
| Court Reporter Fees | $333.45 |
| Document Management (e.g., document review platform/hosting) | $36,967.42 |
| Experts/Consultants | $401,478.75 |
| Federal Express Fees | $1,307.51 |
| Investigation (e.g., investigators, purchases of reports, data) | $1,922.25 |
| Legal Research (e.g., Westlaw, Lexis, PACER, Bloomberg) | $50,206.84 |
| Messenger, Courier & Delivery Fees | $6,186.65 |
| Photocopies - in House | $1,629.87 |
| Photocopies - Outside | $681.00 |
| Prescription Drug Data Purchase (IQVIA) | $112,413.13 |
| Service of Process Fees | $3,485.00 |
| Telephone | $72.84 |
| Transcript Fees | $453.60 |
| Travel (travel, lodging, meals) | $46,969.45 |
| **TOTAL:** | **$666,412.26** |

50.    These expenditures were audited and receipts recorded and kept.

//

//

//

51.    My firm oversaw the Litigation Expense Fund, into which Plaintiffs' Counsel contributed monies and from which some litigation expenses were paid. An accounting of the Litigation Expense Fund is as follows:

### Litigation Fund Accounting

| Litigation Fund Assessments | Amount |
|---|---|
| Berman Tabacco | $107,000.00 |
| Burke LLP | $7,500.00 |
| Glancy Prongay Wolke & Rotter LLP | $7,500.00 |
| Hagens Berman Sobol Shapiro LLP | $55,000.00 |
| Hilliard & Shadowen LLP | $55,000.00 |
| Sperling Kenny Nachwalter LLC | $77,500.00 |
| Bank Interest | $1,179.79 |
| **Total Deposits** | **$310,679.79** |

| Expenses Paid from Litigation Fund | Amount |
|---|---|
| Economic Consulting and Research (Expert Keith B. Leffler, Ph.D.) | $64,295.00 |
| Everlaw | $4,566.98 |
| IQVIA (Presc. Drug Data) | $112,413.13 |
| JA Pharma Consulting (Expert Jerry Andry) | $13,000.00 |
| Kristin M. Kelley, RPR, CRR (Court Reporter) | $333.45 |
| Value of Insight Consulting Inc. (Expert Todd Clark) | $105,000.00 |
| WSM Consulting LLC  (Expert Michael Lusty) | $10,600.00 |
| **Total Expenses** | **$310,208.56** |

| | |
|---|---|
| **Funds Remaining in Litigation Fund** | **$471.23** |

52.    Out of the total unreimbursed expense amount of $666,412.26, the expenses paid using Plaintiff Counsel's Litigation Expense Fund is the $310,208.56 reflected in the table above in paragraph 51.

53.    The largest category of overall expense was $401,478.75 for the several experts retained for consulting and testimony in: (i) economics; (ii) FDA regulatory expertise; (iii) patent expertise; and (iv) expertise in inhaler manufacturing and design. The cost of retaining these experts represents 60.2% of all expenses. The next largest expense was for the purchase of drug

prescription data from IQVIA (17% of total), followed by legal research (7.5%), travel costs (7.0%) and the document hosting database platform (5.5%). Combined, these particular litigation expenses account for 97.2% of all unreimbursed litigation expenses. The travel, lodging, and meals expenses were incurred in connection with (i) appearances before this Court Class and (ii) two multi-day, in-person strategy meetings amongst Class Counsel, one in San Francisco and the other in Chicago. The first meeting occurred shortly after this Court's order denying the Rule 12(b) Motion to Dismiss; the second, after a substantial portion of the document review had completed. These two strategy meetings saved substantial attorney time by ensuring that Class Counsel engaged in coordinated, non-duplicative workstreams across inter-firm teams.

54.     Class Counsel's total lodestar of $9,763,905.50 and unreimbursed litigation expenses of $666,412.26 are significant amounts, reflecting the commitment of Class Counsel, and the risk of taking on this Action on a wholly contingent fee basis.

### BERMAN TABACCO'S ATTORNEYS' FEES AND EXPENSES

55.     The statements concerning Berman Tabacco's fees and expenses are based on Berman Tabacco's books and records and information received from its attorneys and staff. Berman Tabacco's time and expense records are prepared and maintained in the ordinary course of business.

56.     I oversaw my firm's involvement in the Action. Berman Tabacco's time and expense records (including, where necessary, backup documentation) were contemporaneously recorded and kept in my firm's records. They have been reviewed to confirm both the accuracy of the entries as well as the necessity for and reasonableness of the time and expenses expended in this litigation. The time reflected in Berman Tabacco's lodestar calculation and the expenses for which payment is sought are reasonable in amount and were necessary to prosecute the Action and resolve the settlement before the Court.

//

//

//

14

57.     Set forth below is a summary reflecting the amount of time (after any applicable reductions) Berman Tabacco attorneys and professional staff worked on the Action from the inception of the case through the date of the Settlement Agreement's execution on September 25, 2025, the current billing rates applicable to such work, and the corresponding lodestar value of that work. The schedule was prepared based upon daily time records maintained by Berman Tabacco attorneys and professional support staff in the ordinary course of business, and the lodestar calculations are based on the firm's current hourly billing rates.

| Timekeeper Name | Position | Hourly Rate | Total Hours | Lodestar |
|---|---|---|---|---|
| Joseph J. Tabacco, Jr. | P | $1,345.00 | 21.2 | $28,514.00 |
| Kathleen Donovan-Maher | P | $1,335.00 | 24.4 | $32,574.00 |
| Nicole Lavallee | P | $1,335.00 | 23.3 | $31,105.50 |
| Leslie Stern | P | $1,295.00 | 12.0 | $15,540.00 |
| Todd Seaver | P | $1,210.00 | 71.6 | $86,636.00 |
| Matthew Pearson | P | $1,030.00 | 846.7 | $872,101.00 |
| Carl Hammarskjold | P | $940.00 | 364.2 | $342,348.00 |
| Steve Groopman | P | $835.00 | 1,336.9 | $1,116,311.50 |
| Sean Akchin | A | $580.00 | 780.9 | $452,922.00 |
| Christina Sarraf | A | $475.00 | 25.0 | $11,875.00 |
| Brooke Lowell | A | $465.00 | 1,242.2 | $577,623.00 |
| Christina Fitzgerald | A | $440.00 | 124.5 | $54,780.00 |
| Kristie LaSalle | OC | $760.00 | 497.9 | $378,404.00 |
| Sarah McGrath | OC | $655.00 | 45.7 | $29,933.50 |
| Karen Didrickson | SA | $500.00 | 585.7 | $292,850.00 |
| Brian Drake | SA | $450.00 | 157.0 | $70,650.00 |
| Laura Falardeau | SA | $485.00 | 513.2 | $248,902.00 |
| Berna Lee | SA | $450.00 | 685.5 | $308,475.00 |
| Ellee McKim | SA | $450.00 | 174.4 | $78,480.00 |
| **Attorney Totals** | | | **7,532.3** | **$5,030,024.50** |
| James Houghton | INV | $675.00 | 55.0 | $37,125.00 |
| Kathy Becker | PL | $535.00 | 52.6 | $28,141.00 |
| Beto Segura | PL | $410.00 | 44.2 | $18,122.00 |
| Maria Wenzell | PL | $380.00 | 30.1 | $11,438.00 |
| Sahil Patel | PL | $350.00 | 136.8 | $47,880.00 |
| **Non-Attorney Totals** | | | **318.7** | **$142,706.00** |
| | | | | |
| **GRAND TOTAL:** | | | **7,851.0** | **$5,172,730.50** |

15

58.     Berman Tabacco has prosecuted this litigation solely on a contingent-fee basis and has been at risk that it would not receive any compensation for prosecuting claims against Defendants. While Berman Tabacco devoted its time and resources to this Action, it has foregone other legal work for which it would have been compensated.

59.     Berman Tabacco attorneys and staff drafted the complaints, conceived of and executed on the legal theories, led briefing of all contested motions and other pleadings, led and staffed document review, prepared discovery requests, and worked with the experts, and advised and counseled its two clients that were named plaintiffs in the case. Berman Tabacco attorneys participated in oral argument before the Court on motion hearings and case management conferences.

60.     Berman Tabacco attorneys assisted in drafting the settlement agreement and drafted motions for preliminary approval and the plan of distribution, participated in drafting the concurrently filed final approval papers and led the preparation and drafting of the fee and expense application.

61.     The total time for which my firm is requesting an award of legal fees is 7,851.0 hours. The total lodestar value of these professional services is $5,172,730.50.

62.     The above hourly rates for Berman Tabacco's attorneys and professional support staff are the firm's current hourly rates. The hourly rates for attorneys and professional support staff in my firm are the same as the regular rates charged for their services in contingent fee matters. The time and lodestar spent preparing the preliminary approval papers, final approval papers and this fee and expense application are excluded from the above values.

63.     The above hourly rates provided above are reflective of each attorney's experience and expertise in complex, class action litigation, and are comparable to those of peer plaintiffs' firms. The rates are also significantly lower than the rates for similarly experienced attorneys at large defense firms.

64.     The firm's lodestar figures do not include charges for expense items. Expense items are billed separately, and such charges are not duplicated in the firm's current billing rates.

16

Further, expense items do not contain any general overhead costs and do not contain a surcharge over the amount paid to the corresponding vendor(s).

65.    As detailed and categorized in the below schedule, Berman Tabacco has incurred a total of $358,905.52 in expenses from inception through June 2, 2026 for which Class Counsel seeks reimbursement from the Settlement Fund.

| Category | Expenses |
|---|---|
| Court Costs (e.g., filing fees) | $1,929.50 |
| Document Management (e.g., document review platform/hosting) | $32,378.86 |
| Experts/Consultants | $148,583.75 |
| Federal Express Fees | $1,307.51 |
| Legal Research (e.g., Westlaw, Lexis, PACER, Bloomberg) | $31,686.85 |
| Litigation Expense Fund | $107,000.00 |
| Messenger, Courier & Delivery Fees | $6,186.65 |
| Photocopies - in house | $442.96 |
| Service of Process Fees | $3,485.00 |
| Transcript Fees | $453.60 |
| Travel (travel, lodging, meals) | $25,450.84 |
| **TOTAL:** | **$358,905.52** |

66.    The above schedule was prepared based upon expense records reflected in the books and records of Berman Tabacco. These books and records are prepared from expense vouchers, check records, receipts, and other source materials.

### CLASS REPRESENTATIVE SERVICE AWARD

67.    Iron Workers and Utah-Idaho Teamsters retained Berman Tabacco to represent them as named plaintiffs. In addition to reviewing court filings and keeping abreast of the events in the action, both Iron Workers and Utah-Idaho Teamsters responded to substantial discovery demands from Defendants.

68.    Plaintiffs made initial disclosures, responded to 65 requests for production of documents, identified custodians, negotiated and ran search terms, collected documents, and responded to interrogatories. Plaintiffs took the necessary steps to collect transaction level data from the pharmacy benefit managers. At the time the Settlement was reached, Plaintiffs were

working with Class Counsel to prepare for 30(b)(6) deposition testimony concerning Teva's 68 topics of examination served on Plaintiffs.

69. As named plaintiffs and class representatives, Iron Workers and Utah-Idaho Teamsters knew they would be required to produce highly confidential records which would also require extensive redactions in order to be Health Insurance Portability and Accountability Act ("HIPAA") compliant.

70. Both Iron Workers and Utah-Idaho Teamsters engaged with their respective pharmacy benefit managers to (1) get consent to produce confidential plan agreements to Defendants, and (2) collect transaction-level data in a HIPAA complaint-manner.

71. Class Counsel requests that the Court authorize Iron Workers, Utah-Idaho Teamsters, and the other class representatives to receive a $20,000 service award each as compensation for efforts on behalf of class members.

72. A service award, or even a request for one, was not at any time a condition for either Iron Workers' or Utah-Idaho Teamsters' involvement in this action as a named plaintiff and class representative.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on June 5, 2026              _/s/ *Todd A. Seaver*_____
San Francisco, California                  Todd A. Seaver

18